**Mark LARRAMENDY and Ramona Lowe–Larramendy, Plaintiffs,**

**v.**

**Christopher J. NEWTON, an individual, Defendant.**

**No. Civ. S–97–1452 LKK/JFM.**

United States District Court,
E.D. California.

Feb. 23, 1998.

---

Michael McGuire, McGuire and Prentice, Sacramento, CA, for Mark Larramendy.

David Alan Prentice, McGuire and Prentice, Sacramento, CA, for Ramona Lowe–Larramendy.

Corinne Lee Murphy, Attorney General's Office of the State of California, Sacramento, CA, for Christopher J. Newton, California Department of Forestry.

## ORDER

KARLTON, Chief Judge Emeritus.

This matter is before the court on defendant's motion to dismiss. Pursuant to Local Rule 78–230(h), the court disposes of the matter upon the pleadings and papers on file herein, and upon the oral argument of the parties heard on January 26, 1998.

## I.

### THE PLEADINGS

On January 14, 1996, a house in Shasta County California owned by plaintiffs Mark Larramendy and Ramona Lowe–Larramendy caught fire and was completely destroyed. They allege that they do not know the cause of the fire, but that defendant Christopher Newton, an arson investigator for the California Department of Forestry and Fire Prevention ("CDF") who investigated the fire, barred plaintiffs' privately retained arson investigator from entering the property and gathering evidence.

Plaintiffs further allege that defendant Newton knowingly and wrongfully provided the news media and the Shasta County District Attorney's office with evidence that was biased and slanted against plaintiffs, and ignored exculpatory evidence concerning their possible guilt. Finally, they allege that defendant Newton's conduct induced the District Attorney to file criminal actions against the plaintiffs resulting in their wrongful arrest. See Complaint, ¶¶ 3, 26 and 27.

The criminal charges against plaintiff Ramona Lowe–Larramendy were dismissed on September 14, 1996 for lack of evidence. Plaintiff Mark Larramendy was acquitted by a jury on February 5, 1997.

On August 6, 1997, plaintiffs filed a complaint in this court against Newton, asserting

both federal and state law claims. In response, defendant filed the instant motion to dismiss.

Defendant makes four arguments in support of his motion to dismiss. He contends that plaintiffs' 42 U.S.C. § 1983 claim is untimely, that plaintiffs fail to state a claim for substantive due process, that plaintiffs fail to state a procedural due process claim, and that plaintiffs fail to meet heightened pleading standards applicable to cases of this sort. Below the court addresses those assertions seriatim.[1]

## II.

## STATUTE OF LIMITATIONS

■ The statute of limitations for suits under § 1983 brought in California is one year from the date of accrual. See Usher v. City of Los Angeles, 828 F.2d 556, 558 (9th Cir.1987). The cause of action is not ripe, however, until the state criminal proceedings terminate in plaintiff's favor. See Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). State proceedings against Ramona Lowe–Larramendy and Mark Larramendy terminated on September 14, 1996 and February 5, 1997, respectively, and this suit was filed on August 6, 1997, within one year of those dates. Thus, plaintiffs' claim under § 1983 is timely.

## III.

## SUBSTANTIVE DUE PROCESS

The Supreme Court has held that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these

1. The standards applicable to motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) are well-known and need not be repeated here. See, e.g., Country Nat'l Bank v. Mayer, 788 F.Supp. 1136, 1139 (E.D.Cal.1992).

2. As the court understands the complaint it addresses only the conduct of the named defendant relating to his distorting of information supplied to the district attorney; thus, the complaint does not purport to allege a conspiracy among investigators and prosecutors to deprive plaintiffs of their freedom by corruption of the trial process.

claims.'" Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

■ It is established that arrests suffered by virtue of the issuance of a warrant predicated on inadequate affidavits are analyzed under the Fourth Amendment. See, e.g., Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Kalina v. Fletcher, —— U.S. ——, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). It is also established that false affidavits cannot support probable cause. See Franks v. Delaware, 438 U.S. 154, 155, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Because under the instant pleadings the Fourth Amendment provides an explicit textual source of constitutional protection, Albright precludes a suit claiming a violation of substantive due process under the present allegations of the complaint.[2]

## IV.

## PROCEDURAL DUE PROCESS

Plaintiffs allege that defendant wrongfully caused their arrest by intentionally providing false reports to the prosecutor. They contend that a procedural due process claim is cognizable under § 1983 where an investigator, acting under color of law, intentionally distorts the evidence provided a prosecutor, leading to the plaintiff's arrest and prosecution.

Defendant, perceiving the claim to be akin to the state tort of malicious prosecution, notes that "a claim of malicious prosecution is not cognizable under 42 U.S.C. § 1983 if process is available within the state judicial system to provide a remedy." Usher, 828 F.2d at 561–62.[3] Defendant contends that such process is available and therefore moves

See, e.g., Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir.1985)(en banc); Buckey v. County of Los Angeles, 968 F.2d 791, 794–95 (9th Cir.1992); Johnson v. Barker, 799 F.2d 1396, 1400–01 (9th Cir.1986).

3. Because plaintiffs do not contest defendant's characterization of the claim, it is not considered further by the court. The court notes, however, that in this circuit malicious prosecution, vel non, "does not constitute a due process violation." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir.1995).

to dismiss.[4] Plaintiffs argue that an adequate state remedy is unavailable here because a successful state action for malicious prosecution against this defendant is foreclosed by virtue of the state's immunity statutes. See Cal. Gov't Code § 821.6.[5] They maintain that because there is no adequate remedy available under state law they have a right to proceed under § 1983 in this court.

The California Supreme Court has held that under Cal. Gov't Code § 821.6, an officer who "maliciously and knowingly provided [the prosecutor with] false information that led to the filing of criminal charges" would "enjoy absolute immunity from liability." Asgari v. City of Los Angeles, 15 Cal.4th 744, 759, 63 Cal.Rptr.2d 842, 937 P.2d 273 (1997).

Defendant, relying on Tur v. City of Los Angeles, 51 Cal.App.4th 897, 59 Cal.Rptr.2d 470 (1996), nonetheless contends that process is available in the state courts. See id. at 904, 59 Cal.Rptr.2d 470 (state court remedy available even if a defendant can raise a defense to the action).[6]

■ While the question of whether a state claim lies is resolved under state law, the question of whether the process which is available under state law comports with due process is a question interpreting the Fourteenth Amendment to the Constitution of the United States, and thus is a question of federal law. See Erie R.R. Co. v. Tompkins,

304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress the law to be applied in any case is the law of the state."). Accordingly, assuming defendant's construction of Tur is a holding, it is at best merely persuasive authority.[7] As I now explain, this court does not find Tur persuasive.

The question is whether there is a remedy under state law sufficient to satisfy the requirements of due process, when the state's tort law provides absolute immunity for intentional conduct violating plaintiffs' constitutional rights. As far as the court can determine, neither the United States Supreme Court nor the Ninth Circuit has directly addressed the issue of whether due process is satisfied under these circumstances.[8]

While the Ninth Circuit has not had occasion to directly address the question, as noted above, Usher's holding was not dependent upon an abstract right to file, but upon there being "process ... within the state judicial system to provide a remedy." Usher, 828 F.2d at 561–62. This is wholly consonant with the teaching that due process is not a question of formalism, but of a balancing of the interests threatened against pertinent practical realities. See Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).[9]

---

4. Defendant does not contend that plaintiffs may not plead both a Fourth Amendment and a procedural due process claim and thus the court does not reach the issue.

5. Section 821.6 provides:
   "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."
   Cal. Gov't Code § 821.6.

6. Whether Tur actually supports defendant's contention is less than perfectly clear. There, the defendants were firefighters and the court opined that under state law "[d]efendants did not enjoy an unqualified immunity from suit. Their immunity would have depended on their proving by a preponderance of the evidence they were acting within the scope of their employment in doing the acts alleged to constitute malicious prosecution." Tur, 51 Cal.App.4th at 904, 59 Cal. Rptr.2d 470. Here, there appears to be no question that under the allegations of the complaint defendant Newton enjoys the absolute immunity provided by Cal. Gov't Code § 821.6.

7. It is not clear that Tur's observations constitute a holding. The discussion there arises in the context of considering whether the defendant had taken inconsistent positions as to the availability of a tort remedy in federal and state court. It is not clear that if he did so the court would be required to accept the arguments he tendered in the earlier proceeding.

8. The Supreme Court specifically declined to address the issue in Daniels v. Williams, 474 U.S. 327, 333 n. 1, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

9. In Mathews, the Supreme Court noted that determining whether the procedures provided are "constitutionally sufficient requires analysis of the governmental and private interests that are affected." Mathews, 424 U.S. at 334. Specifically, the Court identified three relevant factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

It is of course true that the concept of due process is flexible. *See Premier Communications Network, Inc. v. Fuentes*, 880 F.2d 1096, 1103 (9th Cir.1989). Nonetheless, "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) *overruled on other grounds Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Accordingly, where a constitutionally cognizable interest is at stake, the meaningful hearing component of the due process clause requires an effective opportunity to litigate. *See Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[10] As a matter of common sense much less constitutional law, at a minimum, a meaningful hearing under the circumstances means one that may provide a plaintiff with a remedy for the injury sustained.

In the context of the question at bar, the High Court has explained that relegating those who have suffered a loss by virtue of action taken under color of law to state tort law comports with the Fourteenth Amendment when, *inter alia*, "[t]he remedies provided could have fully compensated the [plaintiff] for the ... loss he suffered ..." *Parratt*, 451 U.S. at 544. As Justice Powell observed, "[i]f [state provided absolute] immunity has the effect of cutting off all state-law remedies, under the Court's reasoning there appears to be a deprivation of procedural due process, actionable in federal court." *See Parratt*, 451 U.S. at 551 n.

9(Powell, J., concurring in the result); *see also Davidson v. Cannon*, 474 U.S. 344, 358–60, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)(Blackmun, J., joined by Marshall, J., *dissenting*)("[t]he State acknowledge[d] that it would have asserted the immunity statute as a defense to a state-court action and that Davidson's complaint would have been dismissed before being heard on the merits ... Lacking a meaningful postdeprivation remedy in state court, Davidson was deprived of his liberty without due process of law.");[11] *see also Hudson v. Palmer*, 468 U.S. 517, 535–36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(holding that state postdeprivation remedies were adequate after determining that state law did not provide absolute immunity).

The issue here is akin to that presented by suits under the Takings Clause. *See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)(the requirement that a property owner attempt to obtain just compensation for a taking of property through the procedures provided by the state "is analogous to the Court's holding in *Parratt v. Taylor*," since in both cases the State's action is not complete until the state fails to make "a reasonable and adequate provision for obtaining compensation.")[12] As the Ninth Circuit has explained, in the context of a Takings claim the exhaustion requirement only applies "when the state provides 'an adequate process for obtaining compensation.' (citation omitted). Plaintiff need not bring a state court action when it would be futile under existing state law." *Sinaloa Lake Owners*

---

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

10. Defendant has not asserted that plaintiffs' complaint does not implicate a liberty interest.

11. The Fourth Circuit's decision below in *Daniels v. Williams*, 720 F.2d 792 (4th Cir.1983), the companion case to *Davidson*, held that "the requirements of procedural due process are satisfied by the provision of a hearing before a tribunal with the power to grant a remedy." *Id.* at 797.

12. As Justice Stevens explained in his concurring opinion in *Daniels v. Williams*, 474 U.S. 327, 338–39, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), a plaintiff may bring a § 1983 action when suing for the violation of specific constitutional guarantees under the Bill of Rights, or a violation of substantive due process regardless of the availability of a state remedy. However, a procedural due process claim "is fundamentally different," because in such a claim "it is not the deprivation of property or liberty that is unconstitutional; it is the deprivation of property or liberty *without due process of law*—without adequate procedures." *Id.* 474 U.S. at 338 (emphasis original).

*Association v. City of Simi Valley,* 882 F.2d 1398, 1402 (1989)(citing *Williamson County,* 473 U.S. at 194–97), *overruled on other grounds Armendariz v. Penman,* 75 F.3d 1311 (9th Cir.1996); *and see Levald Inc. v. City of Palm Desert,* 998 F.2d 680, 686 (9th Cir.1993)(holding that plaintiff was excused from seeking state remedy for regulatory taking when it would have been futile to do so because state did not recognize such actions at the time of the alleged injury). There is simply no rationale for holding that the jurisprudence of the Takings Clause puts substance over form, but the jurisprudence of the Due Process Clause reverses the order.

The question here is not, as characterized in *Tur,* whether a state provided defense undermines the availability of the process due, but whether state provided absolute immunity does.[13] It is true, as the Fourth Circuit observed, that "when a state law creates a cause of action the State is free to define the defenses to that claim, unless of course, the state rule is in conflict with federal law." *Daniels,* 720 F.2d at 798. The issue is, however, not whether the state may define its tort law without coming into conflict with federal law, but whether, when it defines its law so as to preclude recovery, a plaintiff has a meaningful opportunity to be heard sufficient to comport with the requisites of due process.[14]

A parallel analysis of statutes of limitation may help elucidate the issue at bar. Clearly, the extent of a statute of limitations ordinarily raises no issue of constitutional dimension; nonetheless, it would be difficult to argue with a straight face that a statutory scheme comports with due process when it defines the statute so that under all circumstances it expires before a plaintiff could file.

13. The issue here must be distinguished from statutes providing qualified immunity. Such statutes, while they heighten the standard of proof required, nonetheless, provide a plaintiff with an opportunity to prevail.

14. For that reason, the fact that the Supreme Court has construed § 1983 as providing absolute immunity for judicial officers supplies no comfort for defendant's position. Whatever the merits of that construction, it defines the reach of the federal statute not due process.

The statute before the court suffers a defect similar to a statute of limitations which applies as a bar no matter when a plaintiff files. Because under state law plaintiffs are deprived of any remedy whatever the facts, it is clear that plaintiffs' ability to file a complaint is not effective process. Because under state law plaintiffs have no remedy, the state tort law does not provide an adequate postdeprivation process sufficient to satisfy the Fourteenth Amendment.

Finally, the court notes that adopting defendant's position would permit state law to define immunity to suit under § 1983, a result prohibited by the Supremacy Clause. *See, e.g., Kimes v. Stone,* 84 F.3d 1121, 1126–27 (9th Cir.1996)(citing, *inter alia, Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)); *and see Sosa v. Hiraoka,* 920 F.2d 1451, 1460 n. 3 (9th Cir.1990)(noting that the Supreme Court has "held that state law immunities have no force against § 1983 suits where the state law immunity purports to provide immunity 'over and above those already provided in § 1983' ").

For all the above reasons, I conclude that defendant's motion to dismiss plaintiffs' procedural due process claim on this basis will be denied.

## V.

## HEIGHTENED PLEADING STANDARD

Plaintiffs allege that defendant knowingly and wrongfully provided the prosecutor with false reports about plaintiffs. *See* Complaint, ¶ 27. Despite the fact that Fed. R.Civ.P. 8 provides a single standard of pleading adequacy,[15] the Ninth Circuit has held that a heightened pleading standard applies to § 1983 cases in which subjective intent is an element of the claim. *See*

15. While it is true that Fed.R.Civ.P. 9 requires that "all averments of fraud or mistake shall be stated with particularity," it provides no support for *Branch.* On the contrary, the Rule specifically abjures requiring pleading with particularity with respect to allegations concerning state of mind. *See* Fed.R.Civ.P. 9(b)("[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally").

*Branch v. Tunnell,* 937 F.2d 1382, 1386 (9th Cir.1991).[16] Accordingly, since plaintiffs' claim alleges knowing and intentional conduct, it must meet a heightened pleading standard to survive a motion to dismiss. To satisfy *Branch,* plaintiffs' complaint must contain nonconclusory allegations of unlawful intent, including, in cases such as this, a requirement that plaintiff "point out specifically the portion of the warrant affidavit that is claimed to be false." *Id.* at 1387.

■ Plaintiffs allege that defendant provided the Shasta County District Attorney with false reports about plaintiffs and the role they played in the fire. Nonetheless, plaintiffs fail to meet the heightened pleading standard since they fail to allege specifically what defendant reported falsely, or to allege facts tending to show that defendant was aware or should have been aware of the falsity of those statements. Because there has been no showing that leave to amend would be futile, *see* Fed.R.Civ.P. 15(a), plaintiffs' complaint will be dismissed with leave to amend.[17]

## VI.

### ORDER

For all of the foregoing reasons, the court makes the following ORDERS:

1. Defendant's motion to dismiss is GRANTED under compulsion of *Branch v. Tunnell;*

2. Plaintiffs are GRANTED twenty (20) days from the date of this order to file an amended complaint; and

3. The matter is reassigned back to the Honorable Frank C. Damrell, Jr..

IT IS SO ORDERED.

16. In *Branch,* the Ninth Circuit applied the standard used in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Some might think that a federal common law standard for determining when a criminal defendant has satisfied the requisites for an evidentiary hearing on a motion to suppress has little relevance to the issue of whether a plaintiff in a civil action has satisfied Rule 8's pleading standards. The absence of a basis for drawing an analogy, like the absence of textual support in the Rules, however, gave the *Branch* court no occasion to hesitate.

17. Plaintiffs will also be given leave to cure the defective allegations relative to the state tort claims, since they contend that they can allege compliance with the California Tort Claims Act. *See* Cal. Gov't Code § 945.4.